IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


SYLVIA SHATZ and ANDREW SHATZ,

       Plaintiffs,

v.                                    Civil Action No. 3:01CV47
                                            (STAMP)

FORD MOTOR COMPANY,
a Delaware corporation,

       Defendant.


**MEMORANDUM OPINION MEMORIALIZING BENCH ORDER
CENSURING DEFENDANT'S COUNSEL,
DIRECTING DEFENDANT'S COUNSEL TO PAY
CERTAIN COSTS AND ATTORNEY'S FEES FOR
IMPROPER CONDUCT IN JURY ROOM
AND DENYING DEFENDANT'S MOTION TO STRIKE**

I.  Background

The above-styled products liability action involving allegations of strict liability and negligence was presented to a jury at the Martinsburg point of holding court in a trial held from August 22, 2005 through September 7, 2005. The jury returned a verdict in favor of Ford Motor Company ("Ford") late on the afternoon of Wednesday, September 7, 2005. The jury was then discharged immediately following the receipt and filing of the verdict, and judgment on this verdict was entered on September 7, 2005.[1]

---

[1] The undersigned judge and court personnel from the Wheeling point of holding court departed from the courtroom and returned to Wheeling shortly following the jury verdict and the filing of the verdict and before the subject incident occurred.

On September 13, 2005, this Court entered an order in which it indicated that on Saturday, September 10, 2005, the undersigned judge was advised by a law clerk to the Honorable W. Craig Broadwater that, following the return of the jury verdict and the discharge of the jury, the law clerk went to the jury room and found an individual taking notes from a large note pad that contained certain thoughts and impressions of the jury made during its deliberations. Accordingly, this Court set a hearing on this matter for September 23, 2005, in order that it might receive further information to determine what action, if any, should be taken with respect to this incident. This Court also indicated that all counsel or other representatives of the parties who were present in the courtroom on September 7, 2005 should be present at the hearing.[2]

Counsel for the parties were directed to file a response to this Court's order on or before September 20, 2005. This Court directed that such responses identify, if possible, the name of the individual who was in the jury room at the time mentioned and the affiliation of that individual to any party in this civil action. Counsel was directed not to contact any court personnel regarding

---

[2] Thomas Bazemore, one of the attorneys for defendant, Ford Motor Company, subsequently indicated in a motion that he was scheduled to be out of the country on September 23, 2005. Mr. Bazemore declared that he was not present in the jury room, and accordingly, he was excused by this Court from attending the hearing on this issue.

this incident without first having received the prior approval of

this Court.[3]

On September 15, 2005, counsel for Ford Motor Company filed a

response to this Court's September 13, 2005 order indicating that,

following the jury's verdict:

> . . . counsel for both Plaintiffs and Defendant were
> asked by court personnel to retrieve exhibits from the
> jury room.  At that time, . . . a flip chart in the jury
> room [was seen] with certain notes regarding evidence
> presented in this case.

(Def.'s Counsel's Resp. at 1.)  Defendant Ford's counsel further

stated that "out of curiosity, for professional information, and

for personal development purposes," Attorney D. Alan Thomas

requested that his associate, John Isaac Southerland, "copy the

notes for future review."  Id.  The response asserted that

defendant's counsel did not attempt to be "secretive" and that they

did not believe that they were prohibited from copying notes from

the jury room since the jury had completed its deliberations and

had been discharged by this Court.  Id. at 1-2.  The response also

indicated that defendant's counsel did not believe that any court

rules or regulations were "violated either by letter or in spirit."

Id. at 2.

---

[3] No such request for authorization was requested or approved
by this Court prior to the September 23, 2005 hearing.  Counsel for
the plaintiffs has since filed a motion for relief from this
portion of this Court's order.  That motion is not yet fully
briefed and is still pending before this Court.  However, as far as
this Court's ruling on this matter at the September 23, 2005
hearing, it must be deemed untimely.

Attached to Mr. Thomas's response for Ford Motor Company was an affidavit by Mr. Thomas and an affidavit by Mr. Southerland.[4] The response indicated that defendant's counsel had mailed the notes taken by Mr. Southerland to the Court and to opposing counsel, and had directed that any copies of their notes be destroyed. Id. The notes were filed under seal.

On September 20, 2005, counsel for the plaintiffs filed a response to this Court's September 13, 2005 order, indicating that they had no knowledge as to the identity of the person who entered the jury room. The response stated that the plaintiffs' "team" consisted of investigator Jeff Swiger, plaintiff Andrew Shatz, paralegal Linda Quillen, and counsel Scott Segal and Christopher Brinkley. Plaintiffs' counsel stated that only Mr. Brinkley and Ms. Quillen remained at the courthouse after the verdict "to make necessary arrangements with the clerk regarding trial exhibits." (Pls.' Counsel's Resp. at 3.) The response indicated that the courtroom clerk "invited" Mr. Brinkley and defendant's counsel, Mr.

---

[4] Both the affidavit of Mr. Thomas and of Mr. Southerland state that counsel was not aware that taking personal notes of the jury was a violation of any court rule. Mr. Southerland stated in his affidavit that, while he was taking notes, a court clerk entered the room and inquired as to what he was doing. Mr. Southerland indicated that he informed the clerk he was taking notes and that the clerk did not ask him to stop or leave at that time. However, Mr. Southerland stated that a second woman, whom he did not recognize, entered the room and informed him that "they were closing the courtroom and that I would need to leave because everyone else was leaving." (Southerland Aff.) Mr. Southerland stated in his affidavit that he then left the courthouse.

Andrew Cooke, back to the jury room, and that Ms. Quillen never entered the jury room.  Id.  Mr. Brinkley stated that he took possession of the larger exhibits of the plaintiffs and left the jury room seconds after entering it, leaving Mr. Cooke and the clerk behind to gather defendant's large "blowup exhibits."  Id. The affidavits of Mr. Swiger, Mr. Segal, Ms. Quillen and Mr. Brinkley were attached to the plaintiffs' response.

Plaintiffs' counsel's response included a request for this Court to conduct a full investigation of the circumstances of September 13, 2005 and "any potentially related issues."  Id. at 12.  In addition, plaintiffs' counsel requested permission to interview jurors to investigate further improprieties, a new trial in light of alleged improprieties, and costs and attorney's fees. Id.  On September 21, 2005, the plaintiffs filed a separate motion for new trial.

On September 22, 2005, defendant's counsel filed a motion to strike plaintiffs' counsel's response, or in the alternative, a motion for leave to reply to the plaintiffs' response.  Defendant's counsel attached a proposed reply to its response.[5]  This Court conducted a hearing on September 23, 2005.  This memorandum opinion and order memorializes the Court's rulings made at the conclusion of that hearing.

---

[5] Defendant has since filed a response in opposition to plaintiffs' motion for new trial.

## II. Applicable Law

The ability to impose certain sanctions for bad faith conduct is inherent in all courts, including federal district courts. See Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991); United States v. Hudson, 7 Cranch 32, 34 (1812). Certain sanctions are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-631 (1962). However, "because of their very potency, inherent powers must be exercised with restraint and discretion." See Chambers, 501 U.S. at 44-45. Thus, when determining whether the conduct of an attorney requires sanction, a court must be careful to determine whether an attorney's conduct is criminal or civil in nature. Cromer v. Kraft Foods North America, Inc., 390 F.3d 812, 820 (4th Cir. 2004).

Civil contempt is found by "clear and convincing evidence." Cromer at 821 (citing Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000)). If the actions are found to be criminal in nature, a court is required to provide the contemner with constitutional protections designed for criminal defendants, including informing the defendant of his right to counsel and imposing sanctions only after a finding of guilt beyond a reasonable doubt. Cromer at 820. Importantly, a court must avoid "acting both as prosecutor and decision maker" in a proceeding for

criminal contempt in order to maintain the separation of powers "fundamental to our adversary system." United States v. Neal, 101 F.3d 993, 997 (4th Cir. 1996).[6]

The Supreme Court long ago defined the difference between criminal and civil contempt in Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 444 (1911), applying a remedy-oriented distinction. The Fourth Circuit has elaborated on that distinction, holding that "the basic difference between civil and criminal contempt sanctions is that civil contempt sanctions are intended 'to coerce the contemner into compliance with court orders or to compensate the complainant for losses sustained,' while criminal contempt sanctions are intended 'to vindicate the authority of the court by punishing the contemner and deterring future litigants' misconduct . . .'" Bradley v. American Household, Inc., 378 F.3d 373, 378 (4th Cir. 2004)(quoting Buffington v. Baltimore County, 913 F.2d 113, 133 (4th Cir. 1990))(emphasis added).

Where monetary fines are imposed, the distinction between a civil and criminal sanction is difficult to make because such fines often compensate the complainant (civil) and vindicate the

---

[6] Of course, there exists an exception to process due a criminal contemner where contumacious behavior occurs in open court or "direct contempt." This case might have presented an interesting question of whether the defendant's counsel's conduct would constitute "direct contempt," since it occurred in the presence of a clerk of the court. However, it is not necessary for this Court to decide this question because it believes these facts present an instance of civil contempt.

authority of the court (criminal).  Accordingly, the Fourth Circuit has considered several factors to further aid in determining whether such fines signal criminal or civil contempt: (1) whether the fines are payable to the complaining party, (2) whether the fines are conditioned on compliance with a court order, (3) whether the fines are tailored to compensate the complaining party, and (4) whether fines are imposed for punitive purposes.  Bradley at 378.

In addition to inherent powers vested in federal courts, 28 U.S.C. § 1927 provides for the imposition of excess costs, expenses, and reasonable attorney's fees against an attorney "who multiplies proceedings in any case unreasonably and vexatiously." Section 1927 generally applies to instances where an attorney has protracted or multiplied litigation to run up the opposing party's costs.  See Bakker v. Grutman, 942 F.2d 236, 242 (4th Cir. 1991)(dicta).  However, sanctions under § 1927 are also appropriate where "an attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expenses to the opposing party." Cook v. American S.S. Co., 134 F.3d 771, 774 (6th Cir. 1998)(quoting Holmes v. City of Massilon, 78 F.3d 1041, 1049 (6th Cir. 1996)(internal quotation marks omitted)).

Ultimately, as the Supreme Court has stated, the "critical features" for determining whether a sanction is lawful in a

particular case, are the "substance of the proceeding and the character of the relief that the proceeding will afford." <u>Hicks v. Feiock</u>, 485 U.S. 624, 632 (1988).

III.   <u>Discussion</u>

As stated above, plaintiffs' counsel's response requested this Court to: (1) investigate this matter, (2) grant permission for plaintiffs' counsel to contact jurors, (3) grant the plaintiffs a new trial and, (4) grant costs and attorney's fees to plaintiffs' counsel.   (Pls.' Counsel's Resp. at 12.)   Defendant's counsel argues that it takes responsibility for copying notes from the jury room, but that it did not willfully violate any court order or law, and that its conduct was not improper.   They argue that plaintiffs' request for new trial should be stricken from plaintiffs' response as inappropriate and beyond the scope of this Court's September 13, 2005 order.

A.   <u>Copying Notes from a Jury's Deliberation Improper</u>

As a preliminary matter, this Court adopts certain facts set forth in the affidavits submitted by counsel in their response to the September 13, 2005 order.   For the sake of this proceeding only, the Court will assume as true but without deciding, that as represented by counsel, counsel were in the jury room under some form of limited permission by court personnel for the purpose of collecting certain trial exhibits.   However, whether or not they were in the jury room in some way or means by virtue of limited

9

permission of court personnel is not essential to the finding in this case.  The fact that counsel might have obtained permission or responded to a request to enter the jury room to retrieve certain large exhibits would in no way authorize counsel to view or copy the jury notes on the easel.  Certainly, no permission was ever given by this Court to view and copy such notes.

Prior to the hearing on this matter, this Court reviewed the notes copied by Ford's counsel.  These notes clearly reflect the thought processes of the jury and reflect the various issues being considered during their deliberations.  Certain notes even represent the juror's division at the time they were deliberating. In its final jury instructions, the jury was told not to divulge any information as to its division when asking a question of the Court.  So, in effect, Ford's counsel obtained this information notwithstanding the fact that the jurors could not have otherwise provided it to them or to this Court.

This Court also rejects the argument that an attorney who copies notes made by a deliberating jury does nothing improper. The Fourth Circuit has long frowned upon attempts by counsel in an action to probe the deliberative process of the jury after a verdict has been rendered.  As <u>Rakes v. United States</u>, 169 F.2d 739 (4th Cir. 1948), explains:

> If jurors are conscious that they will be subjected to
> interrogation or searching hostile inquiry as to what
> occurred in the jury room and why, they are almost
> inescapably influenced to some extent by that anticipated

annoyance.  The courts will not permit that potential
influence to invade the jury room.  <u>He who makes studied
inquiries of jurors as to what occurred there acts at his
peril, lest he be held as acting in obstruction of the
administration of justice</u>.  Much of such conversation and
inquiry may be idle curiosity, and harmless, but a
searching or pointed examination of jurors in behalf of
a party to a trial is to be emphatically condemned.  It
is incumbent upon the courts to protect jurors from it.

<u>Id.</u> at 745-46 (emphasis added).  In this vein, Local Rule of
General Procedure 47.01 entitled "Contact with Jurors," states that
no party nor his or her agent or attorney, shall communicate or
attempt to communicate with any member of the jury regarding the
jury's deliberations or verdict, without obtaining an order
allowing such communication.  Even assuming that Ford's counsel had
not read this rule, they were certainly aware of it because this
Court stated the contents of that rule to the jurors and to counsel
for both parties in open court in its preliminary instructions in
the trial.

In addition, Federal Rule of Evidence 606(b) reads in
pertinent part, "upon inquiry into the validity of a verdict or
indictment, a juror may not testify as to <u>any matter</u> or statement
<u>occurring during the course of the jury's deliberations</u> or to the
effect of anything upon that or any other juror's mind or emotions
. . . ."  <u>Id.</u> (emphasis added).  As the advisory committee note
suggests, "[t]he values sought to be promoted by excluding the
evidence include <u>freedom of deliberation</u>, <u>stability and finality of
verdicts</u>, and protection of jurors against annoyance and

11

embarrassment." Fed. R. Evid. 606 advisory committee's note (emphasis added); see also McDonald v. Pless, 238 U.S. 254, 267 (1915). Clearly, this evidentiary rule prohibits an attorney from soliciting a post-trial interview of a juror absent permission from the court and notice to opposing counsel. See United States v. DiSalvo, 34 F.3d 1204 (3d Cir. 1994); Simmons First Nat. Bank v. Ford Motor Co., 88 F.R.D. 344 (E.D. Ark. 1980). Similarly, counsel may not bypass Rule 606's prohibition by referencing a jury's deliberative notes as opposed to direct testimony. Prying into writings documenting the jury's process is equally detrimental to the freedom of deliberation, the stability and finality of the verdict, and could even lead to a juror's embarrassment.

Thus, even if Mr. Thomas and Mr. Southerland, as counsel, did not violate the letter of this district's local rule or of Rule 606(b), they violated the spirit of these rules because they did, in effect, communicate with the jurors by reading and copying the notes on the large pad on the easel in the jury room which clearly reflected the juror's deliberations, all without obtaining permission from this Court. See Strag v. Board of Trustees, 55 F.3d 943, 956 (4th Cir. 1995)(noting that "that which is not expressly prohibited is not, thereby, implicitly allowed"). Such notes should always be deemed confidential, unless released by order of the court. See United States v. Thomas, 116 F.3d 606, 618 (2d Cir. 1997)("As a general rule, no one -- including the judge

12

presiding at a trial –- has a 'right to know' how a jury, or any individual juror, has deliberated or how a decision was reached by a jury or juror."). The very essence of our judicial system and the jury system is that there is a sanctity in the jury room and in the jury's deliberations, and therefore, a sanctity in the notes ensuing from those deliberations. See Rakes, 169 F.2d at 745; United States v. Schwarz, 283 F.3d 76, 97 (2d Cir. 2002).

B.     Actions Warrant Award of Certain Costs and Attorney's Fees

There are some rules of conduct, some ethical considerations, and some professional responsibilities, that would seem to flow from what a lawyer generally learns in law school and in schools a lawyer attended before law school, that do not require enactment into rule, into regulation, or into statute. This Court believes that these facts present such a situation. In addition, West Virginia Rule of Professional Responsibility 8.4C states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." Intentional copying of jury notes reflecting the deliberation of the jurors either out of curiosity, for professional information, or for personal development purposes, without first consulting with and obtaining the Court's permission and seemingly without the intention of showing the information either to the Court or to opposing counsel, does constitute professional misconduct in this instance and a

13

breach of professional responsibility on the part of Mr. Thomas and Mr. Southerland.

Accordingly, this Court finds that, based on the responses and affidavits provided by counsel and based on the rules discussed above, clear and convincing evidence shows that Mr. Thomas and Mr. Southerland have engaged in conduct that, from an objective standpoint, falls short of the obligations owed to the Court, to opposing counsel and to the jurors in this action. See Cook, 134 F.3d at 774. By failing in such obligations, Mr. Thomas and Mr. Southerland have required this Court to hold additional proceedings, have complicated the grounds for post-verdict motions, have violated the sanctity of the jury room and have interfered with this Court's ability to achieve an orderly and expeditious disposition of this case, which necessarily continues through the time available for post-verdict motions. See Chambers, 501 U.S. at 43. There is no question that defendant's counsel's conduct has required additional and unnecessary expenditures to be made on the part of plaintiffs' counsel.

## IV. Conclusion

For the reasons stated above, this Court censured Mr. Thomas and Mr. Southerland at the September 23, 2005 hearing for their conduct in connection with the copying of jury notes. See Thomas v. Tenneco Packaging Co., Inc., 293 F.3d 1329. In addition, to compensate opposing counsel for additional costs incurred by the

14

defendant's actions, this Court held that Mr. Thomas and Mr. Southerland were jointly and severally liable for attorney's fees and costs incurred by plaintiffs' counsel in responding to the issue raised concerning the improper copying of notes from the jury room, including any costs incurred by filing a response to this Court's September 13, 2005 order and by attending the September 23, 2005 hearing.

Accordingly, counsel for the plaintiffs were directed to submit to this Court and opposing counsel on or before October 4, 2005, a memorandum of attorney's fees. Counsel for defendant were directed to file any response to plaintiffs' memorandum on or before October 17, 2005.

In fashioning this remedy, this Court has attempted to use discretion and restraint pursuant to Chambers. See Strag, 55 F.3d at 955. It should be noted that this Court does not believe that defendant's counsel's conduct constitutes criminal contempt warranting criminal sanctions. Further, this Court believes that the costs and fees imposed on defendant's counsel reflect the civil nature of these proceedings. See Bradley at 378 (articulating factors for determining whether sanctions are criminal in nature). First, the costs and fees are compensatory rather than punitive. They are designed to reimburse plaintiffs' counsel for the additional and unnecessary expenditures made as a result of the defendant's counsel's impropriety. Second, the costs and

15

attorney's fees are directed to be paid to plaintiffs' counsel, not to this Court. Moreover, the payment in this case is not akin to the situation described in Cromer where attorney's fees were awarded absent a complaining party. See id., 390 F.3d at 822. Here, the plaintiffs' counsel specifically requested costs and attorney's fees in their response to this Court's September 13, 2005 order. (Pls.' Resp. at 12.) Finally, this Court believes that the costs and fees will be narrowly tailored to compensate the plaintiffs' counsel. This Court instructed plaintiffs' counsel to provide to defendant's counsel a memorandum of costs, and defendant's counsel will have an opportunity to respond and to object to any costs or fees proposed by the plaintiffs. This Court will consider plaintiffs' counsel's request, defendant's counsel's response and then tailor any award accordingly.

As a final matter, defendant's counsel's motion to strike or, in the alternative, motion to reply is DENIED. This Court will consider plaintiffs' motion for new trial independent of this order after the issue has been fully briefed by both sides. In addition, plaintiff's counsel's request to interview jurors in connection with this proceeding is hereby DENIED. This Court finds insufficient evidence based on the record to establish good cause to support plaintiffs' counsel's request. See Fed. R. Evid. 606(b); Tanno v. United States, 483 U.S. 107 (1987); United States v. Gravely, 840 F.2d 1156 (4th Cir. 1988).

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    October 26, 2005


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE