IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SYLVIA SHATZ and ANDREW SHATZ,

    Plaintiffs,

v.                                           Civil Action No. 3:01CV47
                                                        (STAMP)
FORD MOTOR COMPANY,
a Delaware corporation,

    Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFFS' MOTION FOR NEW TRIAL**

I. Background

As this Court has stated in previous opinions, the above-styled products liability action involving allegations of strict liability and negligence was presented to a jury at the Martinsburg point of holding court in a trial held from August 22, 2005 through September 7, 2005. The jury returned a verdict in favor of Ford Motor Company ("Ford") late on the afternoon of Wednesday, September 7, 2005. The jury was then discharged immediately following the receipt and filing of the verdict, and judgment on this verdict was entered on September 7, 2005.

On September 21, 2005, the plaintiffs filed a motion for new trial. The defendant filed a response in opposition to the plaintiffs' motion and the plaintiffs filed a reply. For reasons stated below, this Court finds that the plaintiffs' motion for a new trial must be denied.

II.  <u>Applicable Law</u>

Federal Rule of Civil Procedure 59(a) provides in pertinent part:

> A new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .

In contrast to a motion for a judgment as a matter of law in which the court cannot consider the credibility of the evidence, in considering a motion for new trial, "[a] court can exercise its discretion to grant a new trial if the verdict, even though supported by enough evidence to defeat the motion for [renewed judgment as a matter of law], is against the weight of the evidence."  <u>Taylor v. Home Ins. Co.</u>, 777 F.2d 849, 855 (4th Cir. 1986)(citations omitted).

The Fourth Circuit has set forth a "three-pronged Rule 59 standard" in <u>Atlas Food Systems and Services, Inc. v. Crane National Vendors, Inc.</u>, 99 F.3d 587, 594 (4th Cir. 1996).  The first two prongs require the district court to make two factual determinations:  Is the jury's verdict (1) "'against the weight of the evidence' or (2) 'based upon evidence which is false?'"  <u>Id.</u> (quoting <u>Johnson v. Parrish</u>, 827 F.2d 988, 991 (4th Cir. 1987)).  "This review encompasses a comparison of the factual record and the verdict to determine their compatibility."  <u>Atlas</u>, 99 F.3d at 594.  The third prong of the Rule 59 review standard is whether the jury

award or, in this case, verdict will result in a miscarriage of justice. See id.

III. Contentions of Parties

Plaintiffs highlight three alleged errors which they argue require this Court to order a new trial. First, the plaintiffs argue that this Court improperly failed to give an additional instruction on proximate cause following a jury request for clarification of the term. Second, the plaintiffs argue that this Court improperly allowed Ford to submit evidence regarding vehicles that did not have a substantial similarity to the vehicle at issue in this case. Finally, the plaintiffs argue that a post-trial, jury room incident described in this Court's September 13, 2005 memorandum opinion and order tainted the trial, implicated the integrity of the judicial system and requires a new trial.

The defendant responds that the plaintiffs failed to show that the verdict was against the clear weight of the evidence, that the verdict was based on false evidence or that the verdict resulted in a miscarriage of justice. In addressing the plaintiffs' first argument, the defendant maintains that the plaintiffs waived any objection to an additional proximate cause instruction by not objecting to this Court's instruction. In addressing the plaintiffs' second argument, the defendant contends that the vehicle testing introduced by Ford was properly admitted to impeach and contradict the plaintiffs' expert witness. In addressing the

plaintiffs' third argument, the defendant argues that post-trial actions of counsel had no bearing on the jury's verdict, which occurred before the incident.

This Court addresses each of the plaintiffs' arguments in turn.

## IV. Discussion

### A. Clarifying Instruction

On September 6, 2005, this Court held a charge conference during which it reviewed a draft of its jury charge that had been crafted, in part, from the proposed jury instructions submitted by counsel for the parties. At the charge conference, this Court presented the following definition for proximate cause:

> The generally accepted definition of "proximate cause" of an injury is that cause which necessarily sets in operation the factors that accomplish the injury reasonably foreseeable by an ordinary, prudent person as the natural and probable consequence of his or her act or his or her failure to act and which, in natural and continuous sequence unbroken by any efficient, intervening cause, produces the injury and without which it would not have occurred.

See Trial Tr. at 116-17, ll. 24-25, 1-6, Sept. 6, 2005. The parties did not object to this instruction. See Trial Tr. at 8, ll. 11-13, Sept. 6, 2005.

During jury deliberations on September 7, 2005, the jury sent a message to this Court stating: "Is there any way we can get a definition of proximate cause explained in layman's terms?" (Trial Tr. Day 11 at 4, Sept. 7, 2005.) After reviewing the question,

this Court presented the question to counsel for both parties in open court while the jury remained in deliberation in the jury room.

Following the jury's request for a clarification of proximate cause, this Court indicated that it believed its original instruction to be correct, but nevertheless this Court suggested giving the jury a second definition as follows:

> An injury or damage is proximately caused by an act or a failure to act whenever it appears from the evidence that the act or failure to act played a substantial part in bringing about or actually causing the injury or damage and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.

(Trial Tr. at 5 ll. 11-16, Sept. 7, 2005.) Following a discussion in which the defendant's counsel objected to the proposed clarifying instruction, this Court indicated that it would not give a clarifying instruction and then stated the following:

> All right, here is my response [to the jury]. ["]This Court needs to request that you consider the definition of proximate cause as given in this Court's original instructions to you, which definition is contained at pages 6 and 7 of the charge. You shall also consider the other portions of the jury charge in your deliberations.["] <u>Any objections?</u>

(Trial Tr. at 8, ll. 2-7, Sept. 7, 2005 (emphasis added)). Importantly, counsel for the plaintiffs specifically stated, "No, your Honor, I have no objections." (Trial Tr. at 8, l. 10, Sept. 7, 2005.) No further discussion occurred regarding this Court's

proximate cause instruction until the plaintiffs filed their motion for a new trial.

Parties have an affirmative duty to object to a particular jury instruction or failure to give a particular instruction. Fed. R. Civ. P. 51(c)(1). The plaintiffs' counsel did not object to this Court's instruction on the definition of proximate cause at the charge conference, and therefore, would have waived their right to later object had nothing further occurred. See e.g., <u>Bennis v. Gable</u>, 823 F.2d 723, 727 (3d Cir. 1987)(party's failure to object to a charge believed to be erroneous waives issue). However, this Court agrees that the jury's question for a "layman's" definition of "proximate cause" required this Court to review its instruction and made it advisable to consult with counsel for parties. See e.g., <u>Bollenbach v. United States</u>, 326 U.S. 607, 612-13 (1946) ("When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy.").

On review, this Court believes that it took appropriate precautions in addressing the jury's question. This Court first reviewed its original instruction for error, and finding no error, nevertheless drafted a proposed supplemental instruction. Next, this Court gathered counsel in open court without the jury present and presented on the record the jury's question and the Court's proposed response. When the defendant's counsel objected to the proposed response, this Court considered the defendant's objection,

gave plaintiffs' counsel an opportunity to respond and determined that giving an additional proximate cause instruction had the potential to confuse the jury and could inhibit the jury's ability to view the jury instructions "as a whole" as required. See Thornhill v. Donnkenny, Inc., 823 F.2d 782, 787 (4th Cir. 1987). At that point, this Court proposed to the parties an alternative response to the jury question and again asked counsel for parties if there were objections. As stated above, the plaintiffs' counsel offered no objection at this point. Hearing no objection, this Court directed the Court Security Officer to deliver to the jury the instruction in writing that the Court had just presented to counsel for the parties.

For the reasons stated above, this Court finds that plaintiffs' counsel waived any objection they may have had to this Court's response to the jury's questions. At the very least, the plaintiffs should have objected when this Court announced its decision not to give an additional "proximate cause" instruction. Instead, the plaintiffs specifically stated that they did not object to a response from the Court that included no additional definition for "proximate cause."

Even if plaintiffs' counsel did not waive their right to object to this Court's response, this Court finds that its response to the jury's question was a sufficient attempt to clear the jury's confusion on the issue of "proximate cause." At the very least,

7

this Court finds its instruction on "proximate cause" provided jurors with an accurate definition, and when viewed with the charge in its entirety, ". . . provided an accurate overview of the pertinent legal principles and achieved an adequate degree of balance and fairness." <u>Hardin v. Ski Venture, Inc.</u>, 50 F.3d 1291, 1294 (4th Cir. 1995). Accordingly, this Court finds that its instruction regarding proximate cause does not merit a new trial.

B.  <u>Evidence Without Substantial Similarity</u>

The plaintiffs next argue that this Court should have excluded evidence submitted by the defendant of "numerous depictions of other vehicles 'tipping up.'" Primarily, the plaintiffs contend that the defendant's evidence of other vehicles lacked "substantial similarity" to the plaintiffs' actual Ford Explorer and the accident circumstances at issue in this case. Also rooted in the "substantial similarity" objection, the plaintiffs maintain that the defendant failed to timely tender any supporting protocols or data to support the existence of "substantial similarity." In addition, the plaintiffs argue that the consultants who conducted the tests offered by the defendant were not affiliated with this case.

While the plaintiffs' objection is phrased expansively, the plaintiffs specifically direct this Court's attention to the cross-examination of the plaintiffs' expert witness, Mickey Gilbert ("Gilbert"), in which clips from a video of vehicles going up on

two wheels were shown to the jury over the plaintiffs' objection. See Trial Tr. at p. 164-71, Aug. 26, 2005. Accordingly, this Court addresses the admissibility of this video evidence as introduced through the cross-examination of Gilbert.

Gilbert testified for the plaintiffs as an expert "in the area of mechanical engineering design and geometry of vehicles and driving." (Trial Tr. at p. 33, ll. 14-16, Aug. 26, 2005.) Before Gilbert's testimony, the plaintiffs' counsel represented to this Court that Gilbert would "talk about design and lowering center of gravities, [and] the effect of tires" with regard to a vehicle's propensity to rollover. (Trial Tr. at p. 10, ll. 5-6, Aug. 26, 2005.) During direct examination, Gilbert testified that any vehicle is defective if it rolls over "untripped." See Trial Tr. at p. 84, l. 23, Aug. 26, 2005. Gilbert also testified as to general modifications that would make all vehicles less likely to rollover untripped, such as a wider wheel base. In this vein, Gilbert explained a report he submitted to NHTSA discussing tests he performed on Toyotas and competing vehicles in which Gilbert "compares the relationship of the track width and center-of-gravity height and how much force it takes to roll the car over." (Trial Tr. at p. 83, ll. 20-22, Aug. 26, 2005.)

Gilbert then testified as to tests he had conducted on a Ford Explorer, which he indicated was similar to the vehicle involved in the accident at issue in this case. The plaintiffs presented to

9

the jury footage of Gilbert's tests, and Gilbert narrated these clips, explaining his opinion of how the geometry and speed of the vehicle affected its propensity to roll.  In addition, Gilbert testified as to modifications he made to the Ford Explorer that he believed made the vehicle less likely to roll.  See Trial Tr. at p. 93-120, Aug. 26, 2005.

Gilbert's cross-examination began with the following exchange:

Mr. Thomas:

Q. Good afternoon, Mr. Gilbert.

A. Afternoon.

Q. Let me do this, let's go ahead and get a pad out here. [What] I would like to do is talk where the Micky Gilbert standard -- about how to judge vehicles with respect to handling.  Now, according to what you told us earlier, your standard is that if a vehicle rolls over on flat, dry pavement, it is defective, right?

A. That is a standard I agree with.

Q. I mean?

A. That is not necessarily my standard, but it is one that I agree with.

Q. But I mean that is the standard that you brought here to the jury today.  You have told them that if any vehicle rolls over on flat, dry pavement, it is defective, according to you?

A. Yes, if you are doing it in a test environment, it should be such that it doesn't roll over on dry pavement.

(Trial Tr. at p.145-46, ll. 18-10, Aug. 26, 2005.)  From this discussion, the defendant's attorney moved into a discussion of the state-of-the-art for SUVs in 1996.  Specifically, Gilbert and

defendant's attorney discussed the 1975 Blazer and a Chrysler vehicle. At this point, plaintiffs' attorney objected as follows: "Your Honor, I will object to argumentative. <u>I don't mind the line of questioning</u>, but I think it is argumentative to use those words." (Trial Tr. at p. 162, ll. 13-14, Aug. 26, 2005.) (emphasis added).

After several follow-up questions, the defendant's attorney indicated that he wanted to show the jury video clips of vehicles going up on two wheels. Counsel for the parties approached the bench and the plaintiff's counsel objected to the video evidence arguing that it was not relevant because Gilbert did not "design the protocol and run the test." (Trial Tr. at p. 164, l. 18, Aug. 26, 2005.) Counsel for the defendant indicated that the evidence was relevant because it was related to Gilbert's testimony that a vehicle would not roll on flat, dry pavement unless it was defective. In addition, counsel for the defendant indicated that the evidence was relevant because Gilbert was testifying as to the state-of-the-art at the time the Ford in question was designed and ". . . the jury needs to see that when professional drivers drive these vehicles, just like Mr. Gilbert has, the same result is going to occur." (Trial Tr. at p. 165, ll. 12-15, Aug. 26, 2005.) At that time, this Court determined that the evidence was relevant and admissible. This Court must now review its decision in light of the plaintiffs' motion for new trial.

11

"Evidence of other accidents is admissible to impeach testimony that a product was designed without safety hazards only if the proponent first shows that the accidents were substantially similar to the accident presently at issue." Wheeler v. John Deere Co., 862 F.2d 1404, 1409 (10th Cir. 1988). However, "demonstrations of experiments used to illustrate the principles used in forming an expert opinion are not always required to adhere strictly to the circumstances of the events at issue in the trial." Gladhill v. General Motors Corp., 743 F.2d 1049, 1051 (4th Cir. 1984). In other words, substantial similarity is not a relevant consideration in certain circumstances.

In Gladhill, the Fourth Circuit held that "when the demonstration is a physical representation of how an automobile behaves under given conditions, those conditions must be sufficiently close to those involved in the accident at issue to make the probative value of the demonstration outweigh its prejudicial effect." Gladhill at 1052. Crossley v. General Motors Corp., 33 F.3d 818 (7th Cir. 1994), distinguishes Gladhill, finding that "the tests [found prejudicial in Gladhill] illustrated elementary principles of physics rather than the complicated and sometimes counterintuitive aspects of rollover dynamics." Crossley at 823, n. 1.

This Court finds the distinction made in Crossley to be applicable in this action, which involved "the complicated and

12

sometimes counterintuitive aspects of rollover dynamics." Id. In addition, this Court does not believe that the evidence presented by the defendant was used to illustrate "how an automobile behave[d] under given conditions" as was the prohibited purpose in Gladhill. Instead, the defendant's video evidence was used to provide context for Gilbert's testimony on direct in which Gilbert explained his own video clips of a Ford Explorer and a modified Ford Explorer. Indeed, the purpose of Gilbert's testimony as stated by Gilbert, himself, was to explain the "general scientific and engineering principles" involved in the "relationship of the track width and center-of-gravity height and how much force it takes to roll the car over." See Trial Tr. at p. 83, ll. 20-22, Aug. 26, 2005.

Therefore, this Court finds relevant the defendant's video evidence which sought to explore rollover dynamics in the context of the state-of-the-art available at the time the Ford Explorer at issue was designed and manufactured. Accordingly, the vehicles in the clips need not have been "substantially similar" as argued by the plaintiffs. Because no substantial similarity was necessary for the defendant's presentation of the video clips at issue, this Court also rejects the plaintiff's argument that the defendant was required to timely tender supporting protocols or data showing substantial similarity. Moreover, there was no need for the consultants who conducted the tests in the video clips to have been

13

affiliated with this case. For these reasons, the plaintiffs' ground for a new trial based on video clips of "tip-ups" must be rejected.

C. <u>Post-Trial Incident</u>

The plaintiffs' third and final argument concerns a post-trial incident which occurred after the verdict had been returned and the jury discharged at which time certain members of the defendant's counsel's legal team entered the jury room and copied certain notes taken by the jurors during their deliberations. The facts of this incident are set forth in this Court's October 26, 2005 memorandum opinion and order and need not be restated in this opinion. Plaintiffs' rest their argument for a new trial on this issue based on a general premise that "where the [judicial] process itself has been tainted by the mere appearance of impropriety, the Court has the discretion to order that a new trial be held." (Pls.' Mot. New Trial at 9.)

In considering a motion for a new trial, this Court is first required to consider whether the jury's verdict is against the weight of the evidence or based on evidence which is false. Here, the jury rendered its verdict before the post-trial incident. Accordingly, there is no logical way this Court could find that the post-trial incident somehow changed the weight of the evidence or falsified the evidence upon which the jury relied. Therefore, the post-trial incident could not have had an impact on the jury's

14

verdict and the plaintiffs' third ground for a new trial must be rejected.

## V. Conclusion

For the reasons stated above, this Court holds that the jury's verdict does not run counter to the weight of the evidence, is not based on false evidence and does not result in a miscarriage of justice. Accordingly, the plaintiffs' motion for a new trial is hereby DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: January 30, 2006

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE
